and the next case on our calendar is In Re. Grand Jury Proceedings, Oberlander v. United States of America. Thank you. Mr. Oberlander, you may proceed. I would like to just briefly apologize for a few minutes of delay. I'm only allowed to walk a short distance. No apologies are necessary. Just proceed. You have reserved three minutes for rebuttal. Yes, Your Honor. Continue. All right. The case on appeal here immediately bifurcates between jurisdictional issues, by which I mean subject matter or equity jurisdiction, and merits issues. I'm having great difficulty. This is Judge Winter. I'm having great difficulty. I'm sorry. Somebody? Judge Winter. Oh, he can't hear? Is this better? Yes. Speak into the microphone. All right. Thank you. I will address first the jurisdictional issue. The case, as Your Honor called it, In Re. Grand Jury Proceedings, and I mean this deadly serious, not to be frivolous, would certainly suggest that the entirety of the case involves a grand jury, but it doesn't. As we have found out, and I take the government's word for this, as we have found out during appeal, the grand jury subpoena, quote, has to be in quotes, which precipitated their attempt to enforce, as the government concedes, was never issued by an actual grand jury. The grand jury that reportedly issued it had been discharged four or five months before. So do you deny that if a subsequent grand jury issued the same subpoena, you'd be required to meet the terms of it? I would be required to treat it as a valid subpoena, of course. I mean, either meet the terms or take an objective. And didn't a subsequent grand jury just do that? Didn't it? It was issued about four days after this court stayed in enforcement, and I think December 11th, in 2018, there is an outstanding grand jury subpoena that the... With which you have not complied. With respect, Your Honor, it's an identical subpoena. That's my question. You would be required to comply with it, correct? Not unless there were a court order. My understanding is, if I apologize if I am deluded, and I don't mean, again, to be sarcastic, a grand jury subpoena has no force in effect with respect to penalty for noncompliance unless the government brings a motion to compel and the motion is granted, at which point the subpoenaed witness would have a choice of compliance or can be contempt in order to give an appeal of the denial of grudge or grant of compulsion. So for me to... You're not going to comply with this subpoena unless you're compelled to do so? Is that what you're telling us? Your Honor, with respect, I am exercising my Fourth Amendment right. I understand you're right, but is that what you're telling us, that under no circumstances will you voluntarily comply with this subpoena? Actually, I already have voluntarily complied because the subpoena asked for documents covering a certain period of time, I think four years, and I turned over all the documents that correspond to three years voluntarily. The major dispute, in fact, the only dispute is any remaining documents that predate my incorporation, for which I'm claiming a Fifth Amendment active production privilege. The record on appeal reflects that the government wouldn't dispute this, that if we assume purely hypothetically that the universe is 500 documents, again, not conceding the existence of the ones for which I claim a Fifth Amendment, that I have turned over 375 or 390 because of those post-date my incorporation, and as a custodian of records, I don't have a Fifth Amendment subpoena. So any inference that I wouldn't voluntarily comply is misplaced, respectively. I already have to a very large degree. All right, continue. All right. So, since Your Honor has brought up the issue of compliance, I will go quickly to the merits. I believe we have done a thorough job in briefing this, so I will confine my point on argument to the issue that I just began practicing law as a sole proprietor many years ago, and I did not incorporate until 2013. The government requested initially years ago, they served me with a grand jury subpoena in my personal capacity for certain documents, and my counsel at the time, Sheryl Lefcourt, wrote to the government and said, we're going to take a Fifth Amendment active reduction privilege. About nine months went by, and the government reissued the same subpoena to me as a custodian of records of my incorporated law practice. I incorporated in 2013. The subpoena asked for records from, I think, 11 through 15, close enough, and as I stand here today, I have long ago turned over everything responsive from the date of incorporation, but with respect, I cannot be compelled to turn over those documents that were created when I was a sole proprietor, the circuit's law, the Supreme Court law, and it's completely clear. And what happened... Right, I mean, these are documents now that belong to the corporation, right? There is, well, if you're asking me to testify, no. These are documents that predate the creation of the corporation... Yes. But now belong to the corporation. No. Why not? Because not everything in the world I ever did carries over into a corporate format. If you're asking me to testify, just please tell me that so I can... I'm not asking you to testify. Then you want a legal argument? I'm asking you to answer my question. The answer is no. There is no doctrine that everything done before you incorporate automatically is carried over. If you wish, you're on a supplemental briefing. There are precisely two federal cases in the United States anywhere near that point. They both have to do with physicians who incorporated their practices and were later investigated for Medicare fraud or some type of billing fraud, and it was held to be an issue of fact for the court to determine whether or not prior bills that were sent out by the practice when he was a sole proprietor necessarily automatically became corporate documents because it isn't necessarily clear the corporation would ever have needed them or used them. Otherwise, everything I ever wrote going back to when I passed the bar in 1982 became a corporate document when I incorporated, and that just can't be. All right. Well, you've used up your time. You've reserved three minutes. Thank you. Let me turn to the government. Good morning. May it please the court, counsel. Beginning with issue number one, the lower court did not abuse its discretion in finding Mr. Oberlander in contempt and imposing the course of fine, even though the court's enforcement orders were issued shortly after the term of the grand jury had expired. But the theory is that Mr. Oberlander can't purge his contempt once the grand jury expires. Can you speak to that? Yes, Your Honor. As the court noted in its initial written decision of June 6, 2018, it had found that Mr. Oberlander and his colleague, Mr. Lerner, had applied for and received nine extensions of time in responding to the government's motion to compel. So it was clear that Mr. Oberlander and Mr. Lerner were doing everything they could to run out the term of the sitting grand jury. And yet it ran out. It did, Your Honor. However, at the court's September 25, 2018 order, which was issued during the term of the sitting grand jury, it directed Mr. Oberlander to produce the records to the government. And that language is important, Your Honor, because the court had recognized that Mr. Oberlander and Mr. Lerner were trying to run out the clock on the grand jury, as well as the potential statute of limitations. And that made sense because the government could hold those records for presentation to the then sitting grand jury or to a successor grand jury, which is what occurred. It doesn't sound like we're just going to do away with the formality of a grand jury. No, Your Honor. In this case, with these facts, that decision made sense because the court was aware of the delay tactics being used. But the court has other tools at its disposal to deal with delay tactics, including stop granting extensions. But instead, the grand jury expired, and the ability to coerce compliance with a grand jury subpoena expired with it, didn't it?  Well, isn't that—I mean, there's other authority for that same proposition? Yes, Your Honor. The First Circuit decision is in Mr. Oberlander's camp. We rely more on the D.C. Circuit's decision in Ray Seale's case, which has facts closer to ours. There, an individual was served with a grand jury subpoena, did not comply. The government moved to compel. Then the term of the grand jury expired, and the lower court found the individual in contempt. In finding no abuse of discretion there, the D.C. Circuit held that it was proper for the lower court to find that individual in contempt because it was clear that a successor grand jury was carrying on the same investigation. And that's what we have here. Why not Second Circuit authority? Second. Lou Briel from 1926. It's a long time ago. But, I mean, isn't that basically the same case? One was testimonial, one was documentary. Testimonial and documentary. And concluded that when the grand jury expires, then so does the duty to comply with the subpoena, right? Yes, Your Honor. In this case, the grand jury subpoena saw not only the production of the records, but testimony from the custodian of records to talk about how the production had been put together. But with respect to the records themselves, Your Honor, that's in Ray Seale's case, the D.C. Circuit case. I mean, we're not bound by the D.C. Circuit. No, Your Honor. I'm curious as to why our own precedent doesn't compel the same result. It's not exactly on all fours. But the reasoning, which is that there's no duty to a grand jury once the grand jury expires, and therefore you can't coerce somebody to comply with a grand jury subpoena after it expires. Why does that not apply here? With respect to testimony, Your Honor, that's... But what's the distinction? Why would you make a distinction between testimony and documents? What's the textual or statutory or precedential reason for doing that? The distinction is, Your Honor, with these facts and the track record that we had in this case, it made sense for the lower court to direct Mr. Oberlander... It made sense is the reason. Yes, Your Honor. In the capacity, as his capacity, the custodian of records for his firm to produce those records to the government so that the government could present those to the then sitting grand jury or any successor grand jury because it was clear they were attempting to try and run out the term of the grand jury. Has a new grand jury been impaneled? Your Honor, as I think it is in the record, a third grand jury subpoena, we call it grand jury subpoena number three, was issued. It was received by Mr. Oberlander in December of 2018. He has not complied with that, and we have notified the district court of that, and they have taken no further action. And no one is going to grant any extensions on that one, correct? Well, Your Honor, again, the government is not making the decision on whether to approve extension requests or not. So the extension requests go to the court, go to the district court? They go to the lower court, yes, Your Honor. But look, it seems if you want to coerce, then you ask the court to sanction with fines or something that's going to push compliance. If you want to punish for noncompliance, you've got other tools available to you, right? You have the ability to bring criminal contempt charges, right? Yes, Your Honor, and the underlying investigation in all of this, what the grand jury was investigating, is an allegation of criminal contempt. But there could be criminal contempt on top of criminal contempt, I suppose. If he's not complying with his subpoena, a valid subpoena, and it's willful, then the court or the government could commence criminal contempt proceedings against Mr. Oberlander, right? In theory, Your Honor. In theory? Well, yes, Your Honor. Certainly, Mr. Oberlander has attempted to exhaust all of his appellate rights, his motions for reconsideration, et cetera, as are set forth in the record. He claims a merit objection to turning over some records after the incorporation, and that hasn't been litigated before any court yet, has it? It has, Your Honor. We're talking about issue number three, where the lower court found that records from approximately 2011 to 2013, which is when Mr. Oberlander incorporated his law practice, were in fact corporate records within the scope of the grand jury subpoena. And there, the lower court correctly found that Mr. Oberlander had been involved in this underlying litigation for years as an attorney, that he continued to be involved with that same litigation as an attorney beyond 2013, that he had offered no information or evidence that those records were anything other than what he was working for his clients as the attorney of record in that case. And finally, the lower court correctly found that his law practice had held itself out as a corporate entity prior to its incorporation in 2013. So we believe the lower court was correct in finding that those records from 2011 to sometime in 2013 were in fact corporate records within the scope called for by the grand jury. Is that the only period that's in dispute now, from 11 to 13? Yes, Your Honor. Mr. Oberlander has complied with records from the date of incorporation of his law practice to the conclusion of the subpoena. So it's only that short period of two years or two and a half years? Approximately that time range, yes, Your Honor. Okay. Thanks. That's helpful to me. If there are no further questions concerning issues two, four, and five, I will sit down. You can list them and take your time. Well, I see I have about two and a half minutes, so I guess I'll turn briefly to issue number two, Your Honors, and that is that the lower court did not violate Mr. Oberlander's due process rights by finding him in contempt and imposing the coercive fine without holding an additional hearing. In this case, we cite United States v. City of Yonkers, which says that while ordinarily a hearing should be held prior to the imposition of civil contempt sanctions, where the individual has had ample opportunity to comply, has chosen not to comply, and there are no material facts in dispute with regard to noncompliance, a hearing need not be held. And that's exactly what we have here. Mr. Oberlander had had ample opportunity to comply with the subpoenas that he had been served. He had been warned repeatedly by the lower court in its June and September 2018 orders that his failure to comply would result in civil contempt sanctions to include coercive fines. He chose not to comply, and he chose not to present the lower court with information concerning his financial resources. As such, there were no material facts in dispute that would have warranted a separate hearing, and the lower court was correct in finding the character and magnitude of the harm were significant, that that imposition of a fine would have been effective in bringing about his compliance, and that the amount of $1,000 a day was reasonable under the circumstances. Your Honor, you're from the Northern District of New York? Yes, Your Honor. All the Eastern District judges have recused themselves, is that correct? Or they've been disqualified, or what? The U.S. Attorney's Office for the Eastern District of New York was conflicted out, and myself and my colleague were appointed as spouses, yes, Your Honor. Yes, thank you. The Eastern District Office of the U.S. Attorney, with whom this dispute has been going on for a while. Yes, Your Honor. If you're talking about the underlying litigation involving Mr. Oberlander and Mr. Lerner, it has been going on for years. Therefore, Your Honor, we believe that the lower court was correct in finding Mr. Oberlander in contempt and imposing the coercive sanctions, and we would request that the court enforce the lower court's order and direct Mr. Oberlander to comply with the grand jury subpoena. Thank you. Thank you. Mr. Oberlander, you can take the podium. Mr. Oberlander, I've just been told that the issue of whether these documents are reachable by subpoena has already been litigated, and a finding, in fact, has been made by the district court that they are reachable. Is that correct? That is on appeal as a finding unsupported by the evidence in pure legal error and abuse of discretion. That's not disappeal. Well, I would respect it. Well, it certainly is. Oh, it's part of disappeal? Absolutely. The merits position that we have taken is very simply this. There is a case in this circuit, and the name escapes you, forgive me. I'm having some infections and anesthesia. But in that case, a bunch of four lawyers held themselves out as a partnership in the practice of law. They represented themselves to being a partnership in the practice of law. They told the court they were. They handled several hundred cases together, took in something like $20 million in fees and split it up according to profits interests. And then when they were given individually grand jury subpoenas, they took the position they were just loosely affiliated sole proprietors, and this court said no. It didn't use the term estoppel. We in commercial law, which is where I normally would say they were a partnership for estoppel for purposes of the Fifth Amendment. That's what this court held. The statement that my colleague made here, quote, the district court made a factual finding that I held myself out to be practicing in corporate form is a flat misstatement. I don't care or know why he made the misstatement, but it is highlighted extensively both in our request for emergency stay and in our merits appeal. What the judge did was to take that case and say, and it's all quoted extensively in all the different appellate documents that we wrote, she said, that case stands for the fact that if you hold yourself out to be a collective institutional entity, you don't have First Amendment rights, Fifth Amendment. She then said, before Mr. Oberlander incorporated, he practiced law. And since he was practicing law, he was a professional. And as a professional, he was a different person from an individual. And therefore, as a professional, he didn't have Fifth Amendment rights. And as we briefed it, that's an absolute repudiation that is indefensible of 30 years of law on the subject, which would mean every self-employed professional everywhere in the United States no longer has Fifth Amendment rights in that judge's courtroom. That's not the law. No, with respect, Your Honor, that is unappealing. She made no finding, nor could she have, because there's no evidence anywhere in the record. There is no transcript, no evidence, no submission. The government's entire submission on the point said something like it seems likely that he did or he must have or might have. That's legal argument. That's not evidence. It's not a matter of evidentiary insufficiency. It's a matter of misinterpretation by the court below of that case, the entire doctrine of Fifth Amendment law. And, in fact, if you'll forgive me, on the oral argument transcript, and I have it, but I didn't think to memorize the pages. I didn't think it would come up. The judge, Judge Darcy Hall, asks me, but Mr. Oberlander certainly would agree that sole proprietors don't have Fifth Amendment rights with respect to their business records. And I said, I'm sorry, I can't agree to that. And the judge said, why? And I said, because the Supreme Court in Dole 30 years ago said so. That's why. And politely, I assure you, I'm just a little bit aggravated now, and I'll explain in a second if you get one second. And she actually asked me, where is that in the papers? I said, I think it's on page seven. Took a look at it. So, in other words, you have a transcript, but the judge expresses her belief that sole proprietors don't have Fifth Amendment rights. One small point. Absolutely nothing the district court did can possibly be considered to be legally cognizable with respect, and I think I've spent enough time briefing that there's no point in re-arguing it. The subpoena that was issued as a custodian of records to me and my colleague, Mr. Lerner, in April 2017, was not issued by a grand jury. And if my colleague here had walked into a district court and said, we would just like to issue an administrative subpoena and have them turn over documents to the government, maybe we'll use a grand jury, maybe we won't, the court wouldn't have done it. The court would have had no equity authority to issue such an order because separation of powers. In other words, what I'm saying is, from the first subpoena they served on me in 2016 individually, until 2018, I apologize, two years, not one subpoena was issued to me in my capacity as a custodian of records whatsoever. And as I said, I complied with that to a large but not entire degree. The idea, therefore, that I can be accused of running out the clock, I'd like to make a statement, please, and if you'll forgive me, it's not an adjudicative fact. I have possibly an operable lung cancer. Apparently I got it from exposure from the 9-11. It isn't clear why I got it. I have very severe problems. I was in the hospital for over a month in a coma for a large part of the time. When I asked this court for extensions, which you gave me, I explained that and asked it to be filed under seal. You granted that. It's now largely academic. When I asked Darcy Hall, Judge Darcy Hall, for extensions, I think the second one I asked for, she said, if you can't document medically what's wrong, and it was also traumatic brain injury, then I'm going to sanction you. And I sent her medical records and physician's letters directed directly to her and so on. She would have had every right to demand an evidentiary hearing or sanction me, and she didn't. What if I asked for 32 extensions? Would you forgive me if I'm in a coma, if I can't barely breathe or walk two blocks or three blocks, or if I have traumatic brain injury and can't lead? If you'll forgive me, the idea that I ran out the clock is personally offensive to me. Thank you. We'll reserve decision. Thank you.